## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANTUINETTE MILES,** | ) | |
| **13240 Deerfield Road, Apt. 302,** | ) | |
| **Laurel, Maryland 20708,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CoreCivic, Inc.,** | ) | **Jury Demanded** |
| **10 Burton Hills Boulevard,** | ) | |
| **Nashville, Tennessee 37215** | ) | |
| **(Defendant's principal executive offices)** | ) | |
| | ) | |
| **Serve:  Damon T. Hininger,** | ) | |
| **President and Chief Executive Officer,** | ) | |
| **10 Burton Hills Boulevard,** | ) | |
| **Nashville, Tennessee 37215** | ) | |
| **(Registered agent for service)** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT FOR RELIEF FROM
## <u>VIOLATIONS OF TITLE VII AND D.C. HUMAN RIGHTS ACT</u>

### <u>Nature of Claim</u>

1.      Plaintiff brings this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and the District of Columbia Human Rights Act of 1977 ("DCHRA"), D.C. Code § 2-1401 *et seq.*, as amended, for relief from discrimination on the basis of her sex (female), and for retaliation suffered when Defendant issued her a Written Reprimand, subjected her to a hostile work environment, increased her duties, and failed to transfer her to another facility, resulting in her termination after Defendant's contract with the D.C. Department of Corrections ended.

a.      In this action, Plaintiff seeks reinstatement to a position commensurate with her skills and experience with back pay; compensatory damages for the injuries she has suffered; and reasonable attorney's fees and costs.

## Jurisdiction and Venue

2.      The Court has jurisdiction over Plaintiff's Title VII claims pursuant to 42 U.S.C. § 2000e-5(f)(3).

3.      The Court has jurisdiction over Plaintiff's DCHRA claims through the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4.      This Court may assert jurisdiction over Defendant because, at all times relevant to this Complaint, Plaintiff worked for Defendant in the District of Columbia ("D.C." or "District") at the D.C. Correctional Treatment Facility ("Facility") located at 1901 E Street S.E., Washington, D.C. 20003.  D.C. Code §§ 13-423(a)(1), (b); Fed. R. Civ. P. 4(k)(1)(A).

5.      Venue lies in this Court because Plaintiff was employed by Defendant in the District of Columbia, all of the discriminatory actions and decisions took place in the District of Columbia, and the records concerning Plaintiff's employment are maintained in the District of Columbia.

## Description of the Parties

6.      Plaintiff Antuinette N. Miles (hereinafter "Plaintiff") is a citizen of the United States and a resident of the state of Maryland.  Plaintiff was employed by CoreCivic, Inc. (formerly known as Corrections Corporation of America) (hereinafter "Defendant") from June 2005 until February 1, 2017.  Plaintiff was employed by Defendant in the District as the Chief of Security, a supervisory position.

7.      Defendant CoreCivic, Inc. is an entity incorporated in the State of Maryland with headquarters in the State of Tennessee.  At all times relevant to this action, Defendant operated the Facility in the District of Columbia pursuant to a contract with the District.  At all times relevant to this action, Defendant employed more than 25 employees and is subject to Title VII. 42 U.S.C. § 2000e(b).

### Exhaustion of Administrative Remedies

8.      **Title VII.**  In October 2015, Warden Charlie Peterson told Plaintiff that he did not want her as the Chief of Security.  In or around November-December 2015, Warden Peterson asked Plaintiff why she was smiling all the time and stated that such characteristics are why females should not be chief of security.

9.      On March 22, 2016, Warden Peterson issued Plaintiff a CCA Facility Employee Problem Solving Notice ("PSN") and Written Reprimand after one of her subordinates lost a set of keys.  The male subordinate was not disciplined.

10.     After Plaintiff reported Warden Peterson's discriminatory behavior to upper management, on August 3, 2016, the Warden stated that the problems at the Facility were because too many females held leadership positions and bragged that people who file complaints against him, including to the EEOC, no longer work for the Company, but he is still here.  On August 9, 2016, Warden Peterson continued to increase Plaintiff's duties, instructing her to report all officers' overtime.

11.     On August 11, 2016, Plaintiff timely filed a charge with the United States Equal Employment Opportunity Commission ("EEOC" or "Commission") against Defendant alleging discrimination and retaliation in employment in violation of Title VII.  While determining that it

would not "certify that the respondent is in compliance with the statutes[,]" on November 30,

2017, the EEOC issued Plaintiff a Notice of Right to Sue Defendant for violations of Title VII.

12.     Plaintiff has timely filed this suit within 90 days of her receipt of the EEOC's

Notice of Right to Sue.

13.     **DCHRA.**  Defendant terminated Plaintiff effective February 1, 2017.  Plaintiff

files her claims alleging violations of the DCHRA, § 2-1401.11(a)(1), as amended, within one

year of the final unlawful discriminatory act.  § 2-1403.16.

14.     Plaintiff's charge filed with the EEOC tolled the DCHRA's one-year statute of

limitation while the charge was pending.  *Id.*

## Statement of Facts

15.     Defendant is a Maryland corporation formed in 1983.  Its principal executive

offices are located at 10 Burton Hills Boulevard, Nashville, Tennessee, 37215.

16.     In December 2016, Defendant changed the name of the Company from

Corrections Corporation of America to CoreCivic, Inc.

17.     In 1997, Defendant contracted with the District of Columbia to manage the D.C.

Correctional Treatment Facility, owned by the D.C. government.

18.     Defendant's 20-year contract with the District to manage the Facility was

scheduled to expire in the first quarter of 2017.  The District assumed operation of the Facility in

January 2017.

19.     Plaintiff was employed by Defendant from June 2005 until February 1, 2017.  In

June 2005, Plaintiff worked as a Correctional Officer at the Metro-Davidson County Detention

Facility in Nashville, Tennessee.  Rising through the ranks of Sergeant, Lieutenant, Captain, and

Unit Manager, Plaintiff was promoted in October 2010 to Chief of Unit Management at the

4

Silverdale Detention Facilities in Chattanooga, TN.  In January 2015, Plaintiff accepted a lateral transfer to Chief of Security at the Facility in Washington, D.C.

20.     In or around October 2015, during a meeting with Defendant's Human Resources Manager Rhonda Williams, Warden Peterson told Plaintiff that he did not want her as Chief of Security.

21.     Warden Peterson chastised Plaintiff for smiling too much and always being happy; he did not believe these were the qualities of a Chief of Security.

22.     Officers working in security areas reported directly to Plaintiff in her capacity as Chief of Security.  On October 23, 2015, Warden Peterson consulted with Chief of Unit Management Laretta Johnson and, without Plaintiff's input, changed the Security Supervisors' shift schedules.  When Plaintiff followed up with Warden Peterson, he responded that these changes were "concrete."

23.     In or around November 2015, Warden Peterson stated that he did not want to see a picture of Plaintiff looking "glamorous" on the Facility's television monitor because "that is not how a Chief of Security is supposed to look."

24.     On or about November 5, 2015, Warden Peterson instructed Quality Assurance Manager Shameka Bivens to take another picture of Plaintiff.  Plaintiff was not notified in advance that her picture would be taken that day.

25.     On November 8, 2015, Plaintiff notified Warden Peterson of her concerns regarding the Captains' paid time off ("PTO"); specifically, Plaintiff requested help covering shifts, as a result of being low staffed, or approval for the Captains to rollover their PTO. Warden Peterson did not adequately respond to these concerns.

5

26.     Because Warden Peterson did not address these concerns, Plaintiff was forced to work 12- to 14-hour shifts, 7 or 8 days in a row, starting in November 2015 and ending in January 2016.

27.     In or around January 2016, Warden Peterson told Plaintiff that she had poorly managed the Captains' PTO and that is why she had to work these hours.

28.     On March 16, 2016, Plaintiff was advised by Defendant's Key Control Officer that key ring #105 was not returned.

29.     That same day, March 16, 2016, Plaintiff immediately contacted Captain Kevin Bruce, who had signed out key ring #105, to inquire about the keys.  Captain Bruce stated that he had assigned them to one of his subordinates and that all officers were scheduled to return to work the following day.

30.     That same day, March 16, 2016, Plaintiff reported this information to her supervisor, Assistant Warden ("AW") Fulton.  AW Fulton instructed Plaintiff to wait until Plaintiff was able to speak with the officers to confirm whether one of them was in possession of key ring #105.

31.     On or about March 17, 2016, two of the three officers returned to work; neither was in possession of the keys.  Captain Bruce attempted (unsuccessfully) to contact the third officer.

32.     When the third officer returned to work, Plaintiff confirmed that the officer was not in possession of the keys.

33.     At that point, on March 20, 2016, Plaintiff emailed to Warden Peterson a narrative of the events, concluding that, as of that day, March 20, 2016, ERT keys #105 could not be located.

34.     After notifying Warden Peterson that the keys checked out by Captain Bruce could not be located, Plaintiff was directed by Managing Director Jason Medlin to discipline the Captain "for the loss of the keys – they should not be checking out keys for other staff."

35.     As instructed by Mr. Medlin, Plaintiff drafted a CCA Facility Employee Problem Solving Notice ("PSN") for Captain Bruce and provided it to Warden Peterson for his signature. For over a month, Plaintiff followed up with Warden Peterson about completing this action—so that she could serve the Notice on Captain Bruce.

36.     On March 22, 2016, Plaintiff was issued a PSN and charged with "Misconduct Related to Job Performance" for "failure to make proper and timely notifications of a Primary 1 loss of keys."  Warden Peterson signed as the "Primary Approver" on March 21, 2016, and Plaintiff's immediate supervisor, AW Fulton, signed the PSN as the "Service Supervisor" on March 22, 2016.  Plaintiff received a Written Reprimand for this alleged incident.

37.     AW Fulton was instructed by Warden Peterson to generate the PSN against Plaintiff.

38.     Plaintiff grieved the PSN on March 22, 2016.  Plaintiff noted that, consistent with company policy and procedures, on March 16, 2016—the same day Plaintiff was advised that key ring #105 was missing—she reported the missing keys to her supervisor, AW Fulton, prior to leaving the facility at 5:00 p.m.  Plaintiff's supervisor instructed her to wait until she was able to speak with the ERT officers to see if one of them was in possession of the keys.  After following her supervisor's instruction, Plaintiff notified Warden Peterson that the keys could not be located.  In her grievance, Plaintiff provided two comparators demonstrating that the Warden's actions against her were inconsistent with those taken—or lack thereof—against other employees for similar offenses.

39. Although Warden Peterson upheld the PSN against Plaintiff, he canceled and/or removed the PSN against Captain Bruce.

40. On May 9, 2016, Warden Peterson informed Plaintiff that she and the Assistant Warden would be responsible for reviewing shift rosters and assisting with any additional needed coverage, prior to the rosters being sent to the shift supervisors. Plaintiff would also be responsible for assisting shift supervisors with covering call outs and unexpected post coverage. Failure to follow these instructions would result in disciplinary action being taken.

41. On May 9, 2016, Plaintiff emailed Mr. Medlin and Tracie Mathews for assistance because she was "being harassed and discriminated against . . . by Warden Peterson due to the fact I am a woman." Plaintiff noted that she had previously expressed her concerns directly with Warden Peterson on several occasions to no avail. In her correspondence, Plaintiff articulated numerous, specific examples of Warden Peterson's harassing conduct, including the incidents noted in paragraphs 20-39. Mr. Medlin responded that her concerns would be investigated. To Plaintiff's knowledge, the extent of this investigation was a one-day visit by an investigator to the Facility.

42. On May 15, 2016, Warden Peterson informed Plaintiff that she would be responsible for reporting all officers' overtime, irrespective of the unit management concepts, which divided officers' reporting structure between Unit Management (officers who worked in the housing units) and Security.

43. Warden Peterson's response after increasing Plaintiff's workload was that if she was unhappy, she could quit.

44.     On August 1, 2016, Plaintiff followed up with Mr. Medlin regarding her May 9, 2016 concerns and reiterated her request to be removed from Warden Peterson's chain of command.

45.     On August 3, 2016, Plaintiff received an *Internal Investigation Complainant Closeout Notification* that stated her "claim of discrimination based on your gender was not substantiated throughout the course of this investigation; however, potential management concerns were revealed and appropriate action has been / will be taken to properly address them."

46.     Plaintiff was not informed of any actions taken to address these "potential management concerns." To Plaintiff's knowledge, Defendant did not take any action after she reported Warden Peterson's treatment to the Office of Human Resources and upper management.

47.     Following her receipt of the August 3, 2016 Closeout Notification, Warden Peterson called a Security Meeting. During this meeting, Warden Peterson was angry and raised his voice, stating that the problems at the Facility were because so many females were running the jail. Warden Peterson announced that they could call the Facility Support Center, EEOC, or whomever on him, that he did not care, that he has had worse people come at him and they are no longer working for CoreCivic, and that he is still here. Warden Peterson also singled out Plaintiff and the Chief of Unit Management for making a "bonehead" move toward each other, in reference to emails exchanged.

48.     On August 11, 2016, Plaintiff filed an *Incident Statement* requesting leave as a result of "the stress from [Warden Peterson's] harassment and discrimination."

49.     That same day, on August 11, 2016, Plaintiff filed an EEOC *Charge of Discrimination* against Defendant alleging that Warden Peterson created a hostile work

environment for her based on her sex (female).  Plaintiff also alleged that Warden Peterson

retaliated against her for opposing discrimination by increasing her duties, contravening standard

practice.

50.     AW Fulton retired in or around August 2016.  AW Fulton told Plaintiff that he

thought she was a good worker and respected her too much to be used to write her up—in

reference to the March 22, 2016 PSN issued against Plaintiff—and he was tired of it.

51.     In or around June through September 2016, Plaintiff applied for a Chief of Unit

Management position at Trousdale Turner Correctional Center and Metro-Davidson County

Detention Facility in Hartsville and Nashville, Tennessee, respectively.  Plaintiff was not

transferred to either of these positions.

52.     On Plaintiff's information and belief, the March 22, 2016 PSN issued against her

was the reason she was not transferred.

53.     On November 29, 2016, Defendant issued Plaintiff a *Warn Notice* advising her

that its "contract with the D.C. Department of Corrections (DOC) is ending January 31, 2017,"

and her "employment with CoreCivic will be terminated when the layoffs begin midnight,

**Tuesday, January 31, 2017**." (emphasis in original).  This Notice encouraged Plaintiff to

"consider applying for a position at another CoreCivic facility, either on a temporary basis or as

a transferring employee, if you have an interest in continuing your career with us."

54.     On January 5, 2017, Plaintiff emailed Ms. Williams, Warden Peterson, Senior

Director of Human Resources Cindy Sullivan, and Mr. Medlin to inquire about her options for

relocating within CoreCivic.  Plaintiff did not receive a response.

55.     In or around October 2016 through February 2017, at least five other employees

were voluntarily transferred to another facility:  1) Ms. Bivens was placed on temporary duty and

then transferred to the Trousdale Turner Correctional Center; 2) Warden Peterson was transferred to the Metro-Davidson County Detention Facility, as a Warden; 3) Officer Richard Hankins was transferred to the Trousdale Turner Correctional Center; 4)  Officer Dowing was transferred to a facility in Mississippi; and 5) Case Manager Philip McNeal was transferred to the Trousdale Turner Correctional Center, as an Addiction Treatment Specialist.

56.     The Office of Human Resources coordinated transfer decisions with the managing directors.

57.     On November 30, 2017, the Commission issued to Plaintiff its *Dismissal and Notice of Right to Sue.*

### Statement of Claims

### COUNT I
### SEX DISCRIMINATION
### IN VIOLATION OF TITLE VII

58.     Plaintiff realleges and reincorporates paragraphs 15-57 of this Complaint.

59.     Because of Plaintiff's gender, on March 22, 2016, Defendant issued Plaintiff a PSN, charging her with "Misconduct Related to Job Performance" for "failure to make proper and timely notifications of a Primary 1 loss of keys."  Plaintiff was also issued a Written Reprimand as part of this action.  Defendant was aware that Plaintiff's male subordinate was responsible for the underlying incident, but was not disciplined.

60.     As a result of Defendant's conduct, Plaintiff suffered damages including, but not limited to, loss of income, pain and suffering, emotional distress, and humiliation.

### COUNT II
### SEX DISCRIMINATION – HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF TITLE VII

61.     Plaintiff realleges and reincorporates paragraphs 15-57 of this Complaint.

62.     Because of Plaintiff's gender, commencing in or around October 2015, Warden Peterson's derogatory and unwelcome comments regarding women created a pattern of severe or pervasive harassment as set forth herein, which created a hostile environment for Plaintiff in the workplace.

63.     Plaintiff gave Defendant actual notice of the harassment by at least March 22, 2016, and on numerous dates thereafter.  Defendant failed to adequately investigate Plaintiff's complaint and took no remedial action.  Despite Plaintiff's complaints, Defendant's harassment of Plaintiff continued unabated.

64.     As a result of Defendant's conduct, Plaintiff suffered damages including, but not limited to, loss of income, pain and suffering, emotional distress, and humiliation.

**COUNT III**
**RETALIATION**
**IN VIOLATION OF TITLE VII**

65.     Plaintiff realleges and reincorporates paragraphs 15-57 of this Complaint.

66.     Plaintiff's internal complaints regarding Warden Peterson's discriminatory conduct constituted activity protected by Title VII.

67.     Defendant's conduct in increasing Plaintiff's duties following her complaints constitutes retaliation for engaging in protected activity.

68.     As a result of Defendant's conduct, Plaintiff suffered damages including, but not limited to, loss of income, pain and suffering, emotional distress, and humiliation.

**COUNT IV**
**SEX DISCRIMINATION**
**IN VIOLATION OF THE DCHRA**

69.     Plaintiff realleges and reincorporates paragraphs 15-57 of this Complaint.

70.     Defendant's conduct as alleged constitutes discrimination against Plaintiff based on her gender in violation of the DCHRA.

71.     As a result of Defendant's conduct, Plaintiff suffered damages including, but not limited to, loss of income, pain and suffering, emotional distress, and humiliation.

## COUNT V
## SEX DISCRIMINATION – HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF THE DCHRA

72.     Plaintiff realleges and reincorporates paragraphs 15-57 of this Complaint.

73.     Defendant's conduct as alleged constitutes a hostile work environment in violation of the DCHRA.

74.     As a result of Defendant's conduct, Plaintiff suffered damages including, but not limited to, loss of income, pain and suffering, emotional distress, and humiliation.

## COUNT VI
## RETALIATION
## IN VIOLATION OF THE DCHRA

75.     Plaintiff realleges and reincorporates paragraphs 15-57 of this Complaint.

76.     Defendant's conduct in increasing Plaintiff's duties and failing to transfer her to a different facility—resulting in her termination—constitutes retaliation for engaging in protected activity.

77.     As a result of Defendant's conduct, Plaintiff suffered damages including, but not limited to, loss of income, pain and suffering, emotional distress, and humiliation.

## Jury Demand

Plaintiff demands a jury trial of all claims triable to the jury.

## Prayer for Relief

Wherefore, Plaintiff prays that this honorable Court enter a judgment which:

b.      Declares that Defendant discriminated and retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964;

c.      Declares that Defendant discriminated and retaliated against Plaintiff in violation of the D.C. Human Rights Act of 1977;

d.      Enjoins the Defendant from future acts of discrimination and reprisal;

e.      Directs the Defendant to take such measures as are reasonable and necessary to ensure that unlawful employment practices like those described herein are eliminated and do not recur;

f.      Awards Plaintiff compensatory damages for the injuries she has suffered, including emotional and physical harm and damages to her character and reputation, in an amount appropriate to the proof at trial;

g.      Awards Plaintiff reasonable attorney's fees and costs;

h.      Retroactively reinstates Plaintiff to a position commensurate with her skills and experience with back pay and benefits; and

i.      Awards Plaintiff all other legal and equitable relief to which she may be entitled.

## **Verification**

Under penalty of perjury pursuant to 28 U.S.C. § 1746, I swear that the foregoing statements are true and correct to the best of my knowledge and belief.

_____1-31-18_____
Date

Antuinette N. Miles

Respectfully submitted,

*George M. Chuzi*
_____
George M. Chuzi
D.C. Bar No. 336503
Kalijarvi, Chuzi, Newman & Fitch, P.C.
818 Connecticut Avenue, N.W., Suite 1000
Washington, D.C. 20006
Tel: 202-331-9264
Fax: 1-866-455-1504
gchuzi@kcnlaw.com
Attorney for Plaintiff